
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MICHAEL ABRAHAM FARR,

Plaintiff-Appellant,

v.

BONNIE JEANENE KENDRICK,

Defendant-Appellee.

No.    19-16297

DC No. 3:19 cv-8127 DWL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted July 17, 2020
San Francisco, California

Before:    TASHIMA and HURWITZ, Circuit Judges, and MARSHALL,[**]
District Judge.

Michael Farr filed a *pro se* petition under the International Child Abduction

Remedies Act, 22 U.S.C. § 9001 *et seq.*, which implements the provisions of the

Hague Convention on the Civil Aspects of International Child Abduction (the

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Consuelo B. Marshall, United States District Judge for the Central District of California, sitting by designation.

Convention). Farr sought the return of his twin minor children to Mexico, after his ex-wife and mother of the children, Bonnie Jeanene Kendrick, took them from Mexico to live with her in Arizona. The district court denied Farr's petition, concluding that Kendrick was not required to return the children because the children's country of habitual residence was the United States, not Mexico. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Under the Convention, "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020). Thus, "[d]etermination of 'habitual residence' is 'perhaps the most important inquiry under the Convention.'" *Murphy v. Sloan*, 764 F.3d 1144, 1150 (9th Cir. 2014) (quoting *Asvesta v. Petroutsas*, 580 F.3d 1000, 1017 (9th Cir.2009)). "The habitual-residence determination . . . presents a task for factfinding courts, not appellate courts, and should be judged on appeal by a clear-error review standard deferential to the factfinding court." *Monasky*, 140 S. Ct. at 730.

The district court thoroughly and carefully reviewed the evidence and found that the parents did not have a shared, settled intent to abandon the United States as their habitual residence when they moved to Mexico, pursuant to existing precedent. *See Valenzuela v. Michel*, 736 F.3d 1173, 1177 (9th Cir. 2013) ("In the

2

Ninth Circuit, we look for the last shared, settled intent of the parents in an attempt to determine which country is the 'locus of the children's family and social development.'" (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1084 (9th Cir. 2001)). However, after the district court's decision, the Supreme Court held that "a child's habitual residence depends on the totality of the circumstances specific to the case." *Monasky*, 140 S. Ct. at 723. Thus, "a wide range of facts other than an actual agreement, including facts indicating that the parents have made their home in a particular place, can enable a trier to determine whether an infant's residence in that place has the quality of being 'habitual.'" *Id.* at 729.

"Under the circumstances of this case, we decline to disturb the judgment below." *Id.* at 731. The district court's very thorough findings enable us to conclude that, under the totality of the circumstances, the children's habitual residence was the United States. For example, the district court found that Kendrick credibly testified that she viewed the move as temporary and believed the

family would remain in Mexico for three to five years.[1]  The court also relied on Kendrick's repeated requests, in email exchanges and in conversations secretly recorded by Farr, to return to the United States.  The court found "most telling" a January 2017 email exchange, in which Kendrick described Houston, Texas, as their home and permanent residence, and, rather than dispute the characterization, Farr sought to postpone deciding when the move would occur.  A December 2016 email by Farr also supports the district court's finding.  In this email, Farr detailed a "plan of action" for their return to the United States, setting forth decisions they needed to make "very soon," such as which United States city they would move to.  The record also contains March 2016 text message exchanges in which Kendrick expressed uncertainty about whether they would stay in Mexico, writing, for example, that it was difficult for the family to settle in Mexico and make friends because "we don't know month to month if we'll be here or not."

---

[1] Farr raises many challenges to the court's credibility findings, but "[w]here, as here, findings of fact turn on credibility determinations, the findings receive heightened deference in light of 'the fact finder's unique opportunity to observe the demeanor of the witnesses.'" *Valenzuela*, 736 F.3d at 1176 (quoting *Newton v. Nat'l Broad. Co.,* 930 F.2d 662, 671 (9th Cir.1990)).  We do not find any of Farr's arguments regarding alleged inconsistencies that undermine Kendrick's and other witnesses' credibility sufficient to overturn the district court's credibility findings.

Other circumstances the court relied on include the following: Farr, Kendrick, and the children are United States citizens; Farr's sister testified that Farr's job in Mexico was "indefinite" and "temporary"; Kendrick's and the children's temporary visas expired in August 2017;[2] Farr made seven trips to the United States between August 2015 and August 2018; all of Kendrick's and most of Farr's extended family members live in the United States; and Farr maintained an American bank account and American automobile insurance while living in Mexico. In addition, the court noted that the children were less than a year old when they moved to Mexico, only three years old when they returned to the United States, did not speak Spanish, and did not attend school in Mexico. The totality of the circumstances supports the district court's finding that the children's habitual residence was the United States, not Mexico.

For the reasons articulated in *Monasky*, we conclude that it is not necessary to remand for the district court to consider the evidence under the new standard announced by *Monasky*. First, the district court conducted a three-day evidentiary hearing, considering numerous exhibits and testimony from many witnesses, and thus "had before it all the facts relevant to the dispute." *Monasky*, 140 S. Ct. at

---

[2] Farr's argument that the visas were being renewed as of August 2018 is unavailing. He does not indicate when he filed the application for renewal, and, at any rate, he does not dispute that the visas expired in August 2017.

731. Second, "[n]othing in the record suggests that the District Court would appraise the facts differently on remand." *Id.* Third, although Farr cites evidence that he contends establishes the children's habitual residence was Mexico, the district court already "considered the competing facts bearing on those assertions." *Id.* Finally, "[a] remand would consume time when swift resolution is the Convention's objective." *Id.*

The district court carefully laid out all the evidence in favor of both sides, stated which facts it was relying on and which ones it was not, explained the reasons for those evidentiary decisions, and explained its credibility findings. Its findings are supported by the record.[3]

**AFFIRMED.**

---

[3] The district court further concluded that, even if Kendrick would otherwise be required to return the children, an exception to the return requirement applied, *see Monasky*, 140 S. Ct. at 723 (noting that the Convention recognizes that a child's return is not required "if the return would place her at a 'grave risk' of harm or otherwise in an intolerable situation" (quoting Art. 13(b) of the Convention)), finding that there was a grave risk that returning the children to Mexico would expose them to physical or psychological harm. We do not address this finding because we affirm the district court's finding that the children's habitual residence was the United States.